UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE LUIS SOSA,<br><br>          Plaintiff,<br><br>     v.<br><br>R. HULSE,<br><br>          Defendant. | No.  1:19-cv-01333-NONE-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE DENIED<br><br>(ECF No. 18) |

Jorge Luis Sosa ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on September 9, 2019.  (ECF No. 1).  This case is proceeding on Plaintiff's claims against Defendant R. Hulse ("Defendant") and Does 1-3 for excessive force and sexual assault in violation of Plaintiff's Eighth Amendment rights and retaliation in violation of Plaintiff's First Amendment rights. (ECF Nos. 1 & 20 at 2).

On April 9, 2020, Defendant filed a motion to dismiss the complaint on the ground that Plaintiff's claims are time-barred by the statute of limitations. (ECF No. 18 at 1). For the reasons below, the Court recommends denying Defendant's motion to dismiss.

///

///

///

**I.     SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff's complaint alleges as follows:

**Factual Allegations**

On June 6, 2014, Plaintiff was housed at the California Substance Abuse Treatment Facility (SATF).  A correctional officer and an inmate turned off his water.  The next day, on June 7, 2014, three officers took Plaintiff out of his cell to another cell where there were no cameras or there were cameras but they were covered.  Plaintiff was slammed against the wall and one correctional officer put him in a choke hold and punched Plaintiff in the ribs.  Medical reports will confirm the damage he suffered.  Then one of the correctional officers pulled down Plaintiff's boxers and penetrated his anus with a gloved finger.

Plaintiff has been repeatedly targeted by corrections officers because of him standing up and speaking against them when they abused other inmates.  This has been going on for years. He has had many false rule violation reports written about him and property stolen.

Plaintiff asks for the officers to be punished.  He wants to be free from further acts of retaliation by corrections officers.

**Attached Forms**

Plaintiff attached grievances and other forms to his complaint. (ECF No. 1-1). The Court reviews them in chronological order, based on the earliest date on each form.

On December 4, 2014, Plaintiff signed a form that informed him of his rights to privacy with respect to his sexual assault allegation. The form was not numbered, but it was entitled "Victims of Sex Crimes; Acknowledgment of California Penal Code Section 293(a); Notification/Request for Confidentiality of Information." (*Id.* at 11).

Plaintiff signed a CDCR 22 form, for "Inmate / Parolee Request for Interview, Item or Service." It was dated as received on August 24, 2015. In it, Plaintiff sought "copies of all documents, reports or chronos filed in my files that are related to or pertain to the incident on or about June 07th, 2014 at 'C.T.C[.]' – S.A.T.F.-Corcoran at 21:00 HR (I'm referring to the report of sexual assault by c/o Housse and his partners)[.]" (*Id.* at 10). The staff response, dated September 2, 2015, stated that no documents were located.

1   On September 20, 2015, Plaintiff signed another request for information on a form CDCR
2   22a, for "Inmate / Parolee Request for Interview, Item or Service." Plaintiff's request was for
3   information concerning his sexual assault claims. (*Id.* at 12) ("The sole purpose of this request is
4   to respectfully request documentation in regards to the disposition of a sexual misconduct
5   investigation against CSATF officers conducted by ISU.").[1] The response, dated October 1, 2015,
6   was that the investigation was ongoing.

7   There is a single sheet of paper, shown as Page 2, with a date of July 27, 2018. It states
8   that it is from the "Intake and Review Unit, Officer of the Inspector General." It does not clearly
9   show what the letter is about; it discusses only various procedures of reviewing the decision from
10  the OIG. (*Id.* at 3).

11  On August 23, 2018, Plaintiff signed a form CDCR 602, Inmate / Parolee Appeal. It was
12  stamped as received on August 28, 2018. In the grievance, Plaintiff alleges he was assaulted by
13  correctional officers. The substance of the grievance is substantially similar to the allegations in
14  Plaintiff's complaint. (*Id.* at 4-7). The section concerning the first level response was stamped
15  "BYPASS."

16  The second level response was dated October 2, 2018 and signed by various parties on
17  October 11 and 12, 2018. (*Id.* at 8-9). The response stated Plaintiff's allegations were not
18  sustained by internal affairs. (*Id.* at 9).

19  The third level appeal is stamped June 7, 2019. Plaintiff's appeal was denied. (*Id.* at 1-2).

20  **Background Regarding Motion to Dismiss**

21  Plaintiff filed this lawsuit on September 10, 2019. (ECF No. 1).

22  Defendant filed a motion to dismiss on April 9, 2020 on the basis of the statute of
23  limitations. (ECF No. 18). The motion claimed that Plaintiff was not entitled to tolling during the
24  time he was incarcerated, but the motion did not otherwise address potential bases for tolling. (*Id.*
25  at 4-5).

26  Plaintiff's response was due April 30, 2020. He did not file a timely response.

27  Plaintiff filed a motion for an extension of time to amend his complaint on May 19, 2020.

28  [1] An additional copy is on page 13.

(ECF No. 19). The Court denied the motion because Plaintiff had no pending deadline to file an amended complaint. (ECF No. 21). The Court cautioned Plaintiff that his opposition was late and that "currently Defendants' motion to dismiss is unopposed. If Plaintiff wishes to extend this deadline, he should file a motion promptly." (*Id.* at 2).

The Court ordered additional briefing on May 29, 2020 concerning tolling while Plaintiff exhausted his administrative remedies. (ECF No. 22). Defendant filed his additional briefing on July 8, 2020. (ECF No. 25). Plaintiff's response was due July 29, 2020. (*See* ECF No. 22 at 1) ("Plaintiff shall provide a response to such briefing within twenty-one (21) days following service of Defendant's briefing.").

On July 31, 2020, Plaintiff filed a motion for an additional 60-day extension of time to file an opposition to the Motion to Dismiss. (ECF No. 26). The Court granted the motion on August 4, 2020 and ordered Plaintiff to "file his opposition to Defendants' motion to dismiss (ECF No. 18) no later than 60 days from the date of service of this order." (ECF No. 27).

On October 14, 2020, Plaintiff filed a motion for extension of time to oppose the motion, stating he has had no access to the law library and limited access to his legal adviser. (ECF No. 28). Plaintiff claimed that "the prison has initiated even stricter limitations on prisoner's movement; including, 1) No yard or outside activities <u>at all</u>, including law library and access to copying of legal materials, leaving Mr. Sosa actually <u>unable</u> to do the legal research necessary to draft an opposition to the Defendant's motion to dismiss for failure to exhaust." (ECF No. 28, at p. 2). Plaintiff stated that he had limited access to his legal advocate from N.C.L.A.

Plaintiff also argued in his motion for extension of time that he was entitled to equitable tolling. Plaintiff claimed that he had "the honest belief that: 'because of PLRA's requirement that those administrate remedies available to him must have been exhausted before bringing his claims and filing suit," his claim would only accrue after exhaustion of administrative remedies.

The Court requested a response from Plaintiff's institution of confinement. (ECF No. 29). The Warden filed a response with several declarations, which indicated that physical library access was limited from April 4, 2020 to September 1, 2020, "due to conditions arising as a result of the COVID-19 pandemic. These conditions included staff shortages, staff being directed to

1    telework and the placement of social distancing guidelines." (ECF No. 30-2, at p. 2). Following
2    September, 1, 2020, "inmates have been able to access library resources only via the paging
3    system." (ECF No. 30-2, at p. 2). The declarations confirmed that "inmate law library access has
4    been limited and has changed over time during the course of the COVID-19 pandemic."
5    However, the declarations also indicated that Plaintiff had not requested physical or paging access
6    to the law library since August 2019. They also indicated that there have been no restrictions,
7    limitations or delays in the processing of inmate legal mail. (ECF No. 30-4, at p. 2).
8        Based in large part on the foregoing declarations, the Court denied Plaintiff's motion for
9    an extension of time for the reasons described in that order (ECF No. 31), although it considered
10   the legal arguments raised in the motion for extension of time in its initial Findings and
11   Recommendations regarding the motion to dismiss.
12       The Court issued findings and recommendations on November 10, 2020 and
13   recommended that Defendant's motion to dismiss be granted. (ECF No. 32). The Court examined
14   whether Plaintiff was entitled to tolling for the exhaustion of administrative remedies but noted
15   that the statute of limitations had already run by the time Plaintiff filed his administrative
16   grievance. The Court briefly considered Plaintiff's attachments concerning the Office of Internal
17   Affairs but concluded such correspondence alone was insufficient to entitle Plaintiff to tolling.
18   The Court relied in large part on the Ninth Circuit case of *Soto v. Sweetman*, 882 F.3d 865 (9th Cir.
19   2018), which is discussed further below.
20       Plaintiff filed objections to the Court's Findings and Recommendations on December 16,
21   2020. (ECF No. 33). Plaintiff's objections indicate they were prepared with the assistance of
22   NorCal legal Advocates (N.C.L.A.). They are 19 pages long, with legal and factual support. As
23   discussed further below, the objections provide more information regarding Plaintiff's inquiry
24   with the Office of Internal Affairs. Plaintiff asserts that "Plaintiff was told by the Lieutenant that
25   this was the proper course of action for him to take (beginning an inquiry with the Office of
26   Internal Affairs), and that until this was completed, he could not file a grievance on the
27   allegations." Plaintiff also distinguished *Soto*, which Defendant had cited to and, as noted above,
28   the Court had relied on in its Findings and Recommendations. Plaintiff also explained that he is

1  unable to perform legal research.  Plaintiff attached a number of exhibits showing his difficulty

2  performing legal research and opposing Defendant's motion.

3  Defendant responded to those objections on January 11, 2021. (ECF No. 35).

4  The Court vacated its November 10, 2020 findings and recommendations. (ECF No. 36).

5  It now issues these revised findings and recommendations.

## II. TIMELINESS OF FILINGS

At the outset, the Court must determine if it will consider Plaintiff's legal and factual assertions in Plaintiff's Opposition to Findings and Recommendations.  (ECF No. 33).  Defendant argues that Plaintiff's earlier motions for an extension of time indicated that Plaintiff himself faced difficulties conducting legal research, not that a fellow inmate assisting him faced the difficulties. (ECF No. 36 at 5). According to Defendant, "Plaintiff's previous requests for extensions of time [were**]** egregious misrepresentation[s], which wasted the Court's time and multiple prison officials' time." (*Id.* at 6).

As described above and even more fully on the various submissions and orders in this case, Defendant's motion to dismiss has been pending since April 9, 2020. Plaintiff was given repeated opportunities to file an opposition to Defendant's motion.  While Plaintiff requested extensions of time and put forth some legal arguments in connection with these motions, Plaintiff failed to fully respond until December 16, 2020.  It is thus within the Court's discretion to disregard this filing as late.  *See Davidson v. O'Reilly Auto Enterprises, LLC*, 968 F.3d 955, 963 (9th Cir. 2020) ("District courts may also exercise their discretion by enforcing filing deadlines; they have the power to establish reasonable times for the filing of documents and to evaluate the legitimacy of an excuse for failing to file on time." (internal quotation marks and citation omitted)).

However, it is also clear from these repeated filings that Plaintiff was under severe restrictions in his access to the law library and other legal resources due to COVID-19.  For example, it is undisputed that prisoners are unable to obtain physical access to the library and that all access is through paging. Defendant filed an affidavit from S. Tomlinson, the senior librarian at SVSP. (ECF No. 30-2). The affidavit showed the restrictions in using the paging service.

1 Among other things, a prisoner may request no more than three citations per week, with a
2 maximum of thirty printed pages. (*Id.* at 6). Plaintiff also attaches declarations in his objections to
3 the Court's Findings and Recommendations indicating that his legal assistant attempted to use the
4 paging service to copy documents but that the documents sent for copying were lost. (ECF No. 33
5 at 4 (statement by Plaintiff under declaration of perjury), 7-12 (inmate grievances signed by
6 Plaintiff's legal assistant)).

7 Given Plaintiff's pro se status, the restrictions on Plaintiff's law library access, Plaintiff's
8 repeated requests for extensions of time, and Plaintiff's grievances requesting further access, the
9 Court will exercise its discretion to consider Plaintiff's legal and factual arguments set forth in his
10 objections to the Court's initial Findings and Recommendations in considering Defendant's
11 motion to dismiss.

12 **III.   LEGAL STANDARDS**

13        1.     Motions to Dismiss

14 In considering a motion to dismiss, the Court must accept all allegations of material fact in
15 the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Hosp. Bldg. Co. v. Rex*
16 *Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the
17 light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on*
18 *other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813,
19 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's
20 favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must
21 be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*,
22 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally
23 construed after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

24 A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the
25 complaint. *See Iqbal*, 556 U.S. at 679. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a
26 short and plain statement of the claim showing that the pleader is entitled to relief,' in order to
27 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell*
28 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in *Conley*, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## 2.    Statute of Limitations

California's two-year statute of limitations for personal injury actions applies to § 1983 claims brought in this state. *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014); Cal. Code Civ. Proc. § 335.1.[2] "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000). "Under federal law, a claim accrues when

---

[2] There is a single statute of limitations for each state; California's longer statute of limitations of ten years for claims of sexual assault against adults, *see* Cal. Code Civ. Proc. § 340.16(a), does not alter the two-year statute of limitations for § 1983 actions. *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 579 (9th Cir. 2012) (section 1983 plaintiff not entitled to Oregon's longer statute of limitations for childhood sexual response because "a state's residual personal injury statute of limitations, not a range of specialized statutes of limitations, should be applied to § 1983 claims to prevent unnecessary litigation and preserve the efficacy of the § 1983 remedy" (citing *Wilson v. Garcia*, 471 U.S. 261, 272-73 (1985), *superseded by statute on other grounds as recognized by Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004))).

the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

### 3. Equitable Tolling

The statute of limitations can be tolled for various reasons. Relevant here is equitable tolling. Whether Plaintiff is entitled to equitable tolling is determined by California law, except to the extent that California laws are inconsistent with federal law. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

Equitable tolling "operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Jones*, 393 F.3d at 928 (quoting *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003)) (internal quotation marks omitted). Under California law, there is a "three-pronged test for invocation" of the equitable tolling doctrine: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983) (footnote omitted); *accord Addison v. State of California*, 21 Cal. 3d 313, 319 (1978); *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1133 (9th Cir. 2001) (en banc). "Application of California's equitable tolling doctrine 'requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the limitations statute.'" *Jones*, 393 F.3d at 928 (alteration omitted) (quoting *Lantzy*, 31 Cal. 4th at 371). The Ninth Circuit has described this inquiry as "fact-intensive[.]" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

Statutes of limitations are tolled while prisoners exhaust their administrative remedies. *Brown v. Valoff*, 422 F.3d 926, 942–43 (9th Cir. 2005) ("[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process."). Thus, time Plaintiff spent exhausting his administrative remedies does not count against him.

### 4. Pleading Standards for Equitable Tolling

Equitable tolling need not be explicitly pleaded. Rather, a complaint must provide

9

sufficient assertions to show tolling: "[a] motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206–07 (9th Cir.1995); *see also Biotechnology Value Fund, L.P. v. Celera Corp.*, 12 F. Supp. 3d 1194, 1206 (N.D. Cal. 2013) ("'It is not necessary that the complaint explicitly plead equitable tolling,' if 'facts are alleged suggesting the applicability of equitable tolling to suspend the running of the statute of limitations.'" (quoting *Audio Marketing Services, S.A.S. v. Monster Cable Products, Inc.,* C 12–04760 WHA, 2013 WL 633202, *6 (N.D. Cal. Feb. 20, 2013)).

The Ninth Circuit has explained that equitable tolling typically relies on assertions outside of pleadings, so equitable tolling is generally not decided on a motion to dismiss under Rule 12(b)(6): "Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003–04 (9th Cir. 2006); *accord Cervantes*, 5 F.3d at 1276 ("California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation."); *Veronda v. California Dep't of Forestry & Fire Prot.*, 11 F. App'x 731, 735 (9th Cir. 2001) ("The allegations in Veronda's complaint demonstrate that he exercised diligence in pursuing his claim and was given assurances that he had come to the right place to process his administrative claim. These allegations are sufficient to survive a Rule 12(b)(6) motion, since equitable tolling is rarely resolved at the pleading stage.").

**IV. ANALYSIS**

Plaintiff's claim accrued on June 7, 2014—the date of his alleged assault. Thus, absent any tolling, the statute of limitations for Plaintiff's claims expired on June 7, 2016. *See Butler*, 766 F.3d at 1198 (two-year statute of limitations); *TwoRivers*, 174 F.3d at 991 (accrual date). Plaintiff's complaint was filed on September 10, 2019. Thus, absent tolling, Plaintiff's claim would be barred by the statute of limitations.

As Defendant points out, Plaintiff is not entitled to the two years of tolling generally

granted to prisoners under California Civil Code § 352.1 because that section does not apply to prisoners, like Plaintiff, who are serving life sentences without the possibility of parole. *See* Cal. Civ. Code § 352.1(a) (granting tolling only to those imprisoned "for a term less than for life"); *accord Gonzalez v. Gardemal*, 599 F. App'x 292 (9th Cir. 2015) (unreported) ("Contrary to Gonzalez's contention, he is not entitled to statutory tolling because he is incarcerated for a life term without the possibility of parole."); (ECF No. 18-1 at 3-4) (judgment filed in *People of the State of California v. Sosa, Jorge Luis*, Superior Court of California, County of Los Angeles, Case No. VA 026484, dated Jan. 10, 1995, sentencing Plaintiff to "life without the possibility of parole" for murder).[3] Thus, Plaintiff is not entitled to two years' tolling under California Civil Code § 352.1.

Plaintiff filed a staff complaint on August 23, 2018.  Plaintiff finally received a response from the third level on June 7, 2019.  According to the law cited above, the statute of limitations is tolled for this period, *i.e.* 318 days.

The central question is whether Plaintiff is entitled to tolling before filing his administrative grievance while an investigation with the Office of Internal Affairs was pending.

The Ninth Circuit's decision in *Soto v. Sweetman*, 882 F.3d 865 (9th Cir. 2018), is instructive.  There, plaintiff Soto was an inmate who alleged he was sexually assaulted by prison guards in May 2010. *Id.* at 866. He filed a grievance one month later. *Id.* at 868. However, the plaintiff abandoned that administrative grievance because "he was told that the Criminal Investigation Unit would be notified about his complaint and would investigate and that he could continue the grievance process when that Unit completed its investigation." *Id.* at 868. The plaintiff recommenced the grievance process in January 2014. Soto's appeal was denied, and he promptly filed his lawsuit. *Id.* at 868-69.

---

[3] Under Federal Rule of Evidence 201(b)(2), a court may take judicial notice of court records. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004) (same).

Therefore, the Court grants Defendant's request for judicial notice of the judgment from the Superior Court of California, County of Los Angeles, filed by Defendant. *See King v. Contra Costa Cty.*, No. C 20-00462 SBA, 2020 WL 978632, at *3 (N.D. Cal. Feb. 28, 2020) (taking judicial notice of judgments against plaintiff that were filed by defendant in connection with motion to dismiss section 1983 action).

The district court granted summary judgment in favor of defendants, finding Soto's claims were time barred, and the Ninth Circuit affirmed. The Court explained that "The Prison Litigation Reform Act provides that '[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted.' 42 U.S.C. § 1997e(a). Exhaustion is mandatory." *Id.* at 869. Notwithstanding this rule, the Court held that the cause of action accrues when "the inmate knows of the acts . . . and knows that he was injured," but that "courts apply equitable tolling to extend limitations while the inmate exhausts his administrative remedies." *Id.* at 870.

The Court then addressed Soto's argument that a prison staff member had told him that the Criminal Investigation Unit would investigate his claim, and only after that was concluded could Soto start the grievance process. The Court rejected Soto's argument, on the grounds that he failed to submit a proper declaration attesting to this fact, he failed to show that he diligently pursued the Internal Affairs investigation, and he eventually pursued the grievance without waiting for conclusion of the investigation, stating in relevant part:

> Soto raised this argument for the first time in his responses to the defendants' summary judgment motion and to the district court's show-cause order. The district court held that Soto was not entitled to tolling throughout this period because he presented no competent evidence that he was required to wait for the Criminal Investigation Unit to finish its investigation, or that he had done anything to follow up on his sexual-assault claim, including asking about the investigation. We agree.
>
> . . . We do not, as the dissent argues, treat Soto as an ordinary *pro se* litigant, much less as a trained attorney. But we do not entirely release him from any obligation to identify or submit some competent evidence supporting his claim for equitable tolling.
>
> This approach does not unfairly require Soto to take steps beyond his knowledge. The district court followed *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), sending Soto a written notice of the requirements for responding to a motion for summary judgment under the Federal Rules of Civil Procedure. The notice given to Soto explicitly told him that:
>
>> [w]hen a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn

12

> testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the Defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.

Docket Entry No. 63 at 2, *Soto v. Ryan* (D. Ariz. 2015) (No. 14-1323).

> Not only did Soto fail to include any allegations in his 2014 complaint that he could not proceed with the grievance process until the Criminal Investigation Unit completed its investigation, he failed to submit any declaration, affidavit, authenticated document, or other competent evidence to that effect.
> . . .
> The district court was also correct in ruling that no competent evidence showed that, during the three years and nine months Soto stated that he was waiting to hear from the Criminal Investigation Unit, he took any steps to follow up on his claim or ask about the delay in the investigation. The record shows that Soto was not doing anything to exhaust his remedies from May 2010 to January 2014. He failed for almost four years to question the fact that he had heard nothing about the Criminal Investigation Unit's investigation.
> . . .
> Soto's own conduct also undermines his argument that he did nothing for almost four years because he could not pursue his remedies until the Criminal Investigation Unit had finished its investigation. When Soto did eventually exhaust his administrative remedies in 2014, he did not wait for the Criminal Investigation Unit to finish its investigation. Soto made an informal complaint and sent an inmate letter to restart the grievance process in January 2014. He did not wait for the Criminal Investigation Unit to complete its investigation, as he now claims he was told he had to, before proceeding with the third step in the grievance process by filing a formal grievance in March 2014. Soto did not receive notice that the Criminal Investigation Unit had completed its investigation until April 4, 2014. By then, he had already appealed to the warden, step four in the grievance process.

*Id.* at 870-73.

The facts and circumstances at issue here are distinguishable from those in *Soto*. At the outset, this is a motion to dismiss, not a motion for summary judgment. *See Huynh*, 465 F.3d at 1003–04 ("Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue."); *Veronda*, 11 F. App'x at 735 ("The allegations in Veronda's complaint demonstrate that he exercised diligence in pursuing his claim

13

1   and was given assurances that he had come to the right place to process his administrative claim.
2   These allegations are sufficient to survive a Rule 12(b)(6) motion, since equitable tolling is rarely
3   resolved at the pleading stage."). Plaintiff attached to his complaint correspondence with the
4   Office of Internal Affairs and documents concerning his exhaustion for administrative remedies.
5   These documents provide some evidence of pursuit of claims before filing and could entitle
6   Plaintiff to equitable tolling. *See Supermail Cargo*, 68 F.3d at 1206–07 ("A motion to dismiss
7   based on the running of the statute of limitations period may be granted only if the assertions of
8   the complaint, read with the required liberality, would not permit the plaintiff to prove that the
9   statute was tolled.").

10   Additionally, Plaintiff has asserted that:

> Here, Plaintiff was told by the Lieutenant that this was the proper course of action for him to take (beginning an inquiry with the Office of Internal Affairs), and that until this was completed, he could not file a grievance on the allegations. Thus, Plaintiff did timely file, and was party to, an administrative remedy, the rem[e]dy he believed was proper.

14   (ECF No. 33 at 2). Plaintiff's objections to the Findings and Recommendations are signed by
15   Plaintiff under penalty of perjury. Although it is not in a declaration format, the facts have been
16   verified, unlike in Sosa. Moreover, because this is not a motion for summary judgment, Plaintiff
17   has not been given any instructions pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir.
18   1998) (en banc), as to the importance of submitting such a declaration.

19   Unlike the Plaintiff in *Soto*, according to exhibits attached to his complaint, Plaintiff
20   sought information about the status of his criminal investigation multiple times while the process
21   was pending. On August 24, 2015, Plaintiff signed a CDCR 22 form, requesting "copies of all
22   documents, reports or chronos filed in my files that are related to or pertain to the incident on or
23   about June 07th, 2014 . . . (I'm referring to the report of sexual assault by c/o Housse and his
24   partners)[.]" (ECF No. 1-1 at 10). He was informed there were no documents. (*Id.*). Plaintiff tried
25   again on September 20, 2015, this time on a form CDCR 22a. (*Id.* at 12) ("The sole purpose of
26   this request is to respectfully request documentation in regards to the disposition of a sexual
27   misconduct investigation against CSATF officers conducted by ISU."). This time, he was
28   informed the investigation was still ongoing and he would be informed when it was complete.

14

(*Id.*) ("To the best of my knowledge this is still an open investigation. Upon completion and closure of the investigation by staff at the institution where the alleged event occurred, you will get a memo and advisement.").

Additionally, unlike in *Soto*, there are indications that Plaintiff did in fact wait until the end of the criminal investigation process to file his administrative remedy. On July 27, 2018, a letter from the "Intake and Review Unit, Office of the Inspector General" provides procedures for reviewing the decision from the OIG. (*Id.* at 3). Plaintiff began exhausting his administrative remedies on August 23, 2018—less than a month after his OIG inquiry apparently came to an end.

Finally, it is worth noting that the Court in *Soto* applied the standards from Arizona state law. California's rules for equitable tolling require a fact-specific analysis regarding what notice the defendants received in an earlier claim:

> Of the three [elements in California's test], the notice factor seems most adaptable to general rules established as a matter of law. However, even this factor often requires a practical, fact-specific analysis. Although generally the notice factor "means that the defendant in the first claim is the same one being sued in the second," this is not an absolute requirement. *See Collier*, 142 Cal.App.3d at 924, 191 Cal.Rptr. at 685. The notice factor may be satisfied where a defendant in the second claim was alerted to the need to gather and preserve evidence by the first claim even if not nominally a party to that initial proceeding. *See Id.* at 928–29, 191 Cal.Rptr. at 688–89. For example, here the district court noted that several of the defendants were not parties to Cervantes' administrative proceedings. However, from the allegations of the complaint, it appears that these defendants, all but one of whom have close affiliations with the City, may well be in the kind of evidentiary privity as would justify overlooking their nominal absence from the Civil Service proceedings.

*Cervantes*, 5 F.3d at 1276 n.3. At this stage in the proceedings, the Court is without sufficient information regarding the Criminal Affairs Investigation to determine what if any notice Defendants received. It is possible that facts could show that the Criminal Affairs Investigation satisfies California equitable tolling rules.

Thus, construing facts in favor of Plaintiff at this stage in litigation, it appears that equitable tolling could apply to the Criminal Affairs Investigation and Administrative Grievance process that would render Plaintiff's complaint timely, as follows:

15

| Major Event Alleged | Date | Days since previous event |
|---|---|---|
| Incident | June 7, 2014 | N/A |
| Date privacy form in connection with law enforcement complaint signed | December 4, 2014 | 143 |
| End of law enforcement complaint | July 27, 2018 | 1331 |
| Staff grievance submitted | August 23, 2018 | 27 |
| Third level appeal denied | June 7, 2019 | 318 |
| Complaint filed | September 10, 2019 | 66 |
| *Total Time Elapsed* | | *1921* |

Thus, after subtracting the periods for equitable tolling and exhaustion, the statute of limitations ran for 236 days. That is well under the 730 days, i.e., two years.

Defendant makes several additional arguments. First, Defendant argues in its response to Plaintiff's objections to the findings and recommendations, that two "other decisions independently support the Findings and Recommendations' determination that Plaintiff is not entitled to tolling for exhaustion of administrative remedies." (ECF No. 35 at 5). Those two decisions do not prevent a finding of equitable tolling. The first case, *McGinnis v Ramos*, Case No. 15-cv-2812 JLS (JLB), 2018 WL 3104307 (S.D. Cal. June 25, 2018), was at summary judgment and did not consider whether equitable tolling is available when a prison official instructs a prisoner to delay filing a grievance. Rather, it found that the plaintiff was not entitled to equitable tolling during the time he was not exhausting his administrative remedies.

The second case, *Ray v. Leal*, No. 11-CV-05550-YGR (PR), 2015 WL 1501056 (N.D. Cal. Mar. 31, 2015), *aff'd*, 633 F. App'x. 401 (9th Cir. 2016), did concern outside parties' investigations of the alleged constitutional violations. However, there, the "Defendants concede[d] that, for the purposes of their motion for summary judgment, Plaintiff is entitled to equitable tolling based on his attempts to pursue his administrative filings outside of the courts." *Id.* at *7. The court found that the statute of limitations had expired anyway because even assuming the time was tolled, the plaintiff still filed his complaint seven days too late. Thus, Defendant's other citations are not convincing.

///

///

16

## V.  CONCLUSION AND RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss (ECF No. 18) be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **January 27, 2021**                    /s/ Erica P. Grosjean
                                                                UNITED STATES MAGISTRATE JUDGE

17